# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| WAYNE APPLEGATE, Individually and For Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BUCKEYE PARTNERS, L.P.,<br><br>Defendant. | Case No. 2:21-cv-791<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION/FED. R. CIV. P. 23** |

## COMPLAINT

### SUMMARY

1. Plaintiff Wayne Applegate ("Applegate") brings this lawsuit to recover unpaid overtime wages and other damages from Buckeye Partners, L.P. ("Buckeye") under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA") (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and the Pennsylvania Minimum Wage Act ("PMWA").

2. Applegate worked for Buckeye as an Inspector.

3. Applegate and the Day Rate Inspectors (as defined below) regularly worked for Buckeye in excess of forty (40) hours each week.

4. But Buckeye did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, PMWA, and the Ohio Acts, Buckeye improperly paid Applegate and the Day Rate Inspectors a daily rate with no overtime compensation.

6. This class and collective action seeks to recover the unpaid overtime wages and other

damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. The Court also has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

9. The Court has supplemental jurisdiction over any state law class pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a significant portion of the facts giving rise to this lawsuit occurred in this District.

11. Applegate worked for Buckeye in Allegheny County, Pennsylvania.

12. Buckeye maintains a corporate office in Breinigsville, Pennsylvania.

## THE PARTIES

13. Applegate worked for Buckeye from March 2018 until November 2019 as a Utility Inspector.

14. Throughout his employment, Buckeye paid Applegate a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

15. Applegate's consent to be a party plaintiff is attached as Exhibit A.

16. Applegate brings this action on behalf of himself and all other similarly situated workers who were paid by Buckeye's day-rate system. Buckeye paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

17.     The class of similarly situated employees or Day Rate Inspectors sought to be certified is defined as follows:

> **All inspectors who worked for, or on behalf of, Buckeye Partners, L.P. who were paid a day rate with no overtime in the past three (3) years.** ("FLSA Inspectors").

18.     Applegate also seeks class certification of a class under FED. R. CIV. P. 23 under the Ohio Acts, defined as follows:

> **All inspectors who worked for, or on behalf of, Buckeye Partners, L.P. in Ohio who were paid a day rate with no overtime in the past three (3) years.** ("Ohio Inspectors").

19.     Applegate also seeks class certification of a class under FED. R. CIV. P. 23 under the PMWA, defined as follows:

> **All inspectors who worked for, or on behalf of, Buckeye Partners, L.P. in Pennsylvania who were paid a day rate with no overtime in the past three (3) years.** ("Pennsylvania Inspectors").

20.     The members of the FLSA Inspectors, Ohio Inspectors, and Pennsylvania Inspectors can be readily ascertained from Buckeye's records.

21.     Collectively, the FLSA Inspectors, Ohio Inspectors, and Pennsylvania Inspectors are referred to as the Day Rate Inspectors.

22.     Buckeye Partners, L.P. is a Limited Partnership organized under the laws of the State of Delaware and may be served at 5 Tek Park 9999 Hamilton Blvd, Breinigsville, PA, 18031.

## COVERAGE UNDER THE FLSA

23.     At all times hereinafter mentioned, Buckeye was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24.     At all times hereinafter mentioned, Buckeye was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all relevant times, Buckeye has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

26. At all relevant times, Buckeye has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

27. In each of the past 3 years, Buckeye's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

28. At all relevant times, Applegate and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

29. Buckeye uniformly applied its policy of paying its Inspectors, including Applegate, a day rate with no overtime compensation.

30. Buckeye applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

31. By paying its Inspectors a day rate with no overtime compensation, Buckeye violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

32. As a result of this policy, Applegate and the Day Rate Inspectors do not receive overtime as required by the FLSA.

33. Buckeye's uniform compensation scheme of paying its Inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**THE FACTS**

34. Buckeye is a company engaged in natural gas pipeline transport. As the owner and operator of liquid petroleum products pipeline, it hires personnel (like Applegate) to perform inspection work.

35. Many of these individuals worked for Buckeye on a day rate basis (without overtime pay).

36. These workers make up the proposed collective of Day Rate Inspectors.

37. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

38. Throughout Applegate's employment with Buckeye, Buckeye paid him on a day rate basis.

39. Applegate and the Day Rate Inspectors work for Buckeye under its day rate pay scheme.

40. Applegate and the Day Rate Inspectors do not receive a salary.

41. If Applegate and the Day Rate Inspectors did not work, they did not get paid.

42. Applegate and the Day Rate Inspectors receive a day rate.

43. Applegate and the Day Rate Inspectors do not receive overtime pay.

44. This is despite the fact Applegate and the Day Rate Inspectors often worked 12 or more hours a day, for 7 days a week, for weeks at a time.

45. Although he typically worked 7 days a week, for 12 or more hours a day, Applegate did not receive any overtime pay.

46. Applegate and the Day Rate Inspectors received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

47. Applegate and the Day Rate Inspectors are not employed on a salary basis.

48. Applegate and the Day Rate Inspectors do not, and never have, received guaranteed weekly compensation from Buckeye irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

49. Applegate and the Day Rate Inspectors work in accordance with the schedule set by Buckeye.

50. Applegate's work schedule is typical of the Day Rate Inspectors.

51. Buckeye controls Applegate and the Day Rate Inspectors' pay.

52. Likewise, Buckeye controls Applegate's and the Day Rate Inspectors' work.

53. Buckeye requires Applegate and the Day Rate Inspectors to follow Buckeye's policies and procedures.

54. Applegate and the Day Rate Inspectors' work must adhere to the quality standards put in place by Buckeye.

55. Applegate and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

56. As an Inspector, Applegate was responsible for ensuring Buckeye's projects were completed according to established guidelines, specifications, and restrictions.

57. All of Buckeye's Day Rate Inspectors perform similar duties, inspecting projects, ensuring work is done according to established guidelines, specifications, and restrictions.

58. Applegate and the Day Rate Inspectors provide inspection reports to Buckeye personnel.

59. At all relevant times, Buckeye maintained control over Applegate and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

60. Applegate and the Day Rate Inspectors do not have the power to hire or fire any employees.

61. Applegate's working relationship with Buckeye is similar Buckeye's relationship with its other Day Rate Inspectors.

62. Buckeye knew Applegate and the Day Rate Inspectors worked more than 40 hours in a week.

63. Buckeye knew, or showed reckless disregard for, whether the Day Rate Inspectors were entitled to overtime under the FLSA, Ohio Acts, and PMWA.

64. Nonetheless, Buckeye failed to pay Applegate and the Day Rate Inspectors overtime.

65. Buckeye willfully violated the FLSA, Ohio Acts, and PMWA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

66. By failing to pay Applegate and those similarly situated to him overtime at one-and-one-half times their regular rates, Buckeye violated the FLSA's overtime provisions.

67. Buckeye owes Applegate and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

68. Because Buckeye knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Buckeye owes these wages for at least the past three years.

69. Buckeye is liable to Applegate and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

70. Applegate and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## OHIO WAGE ACT VIOLATIONS

71. Applegate brings this claim under the Ohio Wage Act as a Rule 23 class action.

72. The conduct alleged violates the Ohio Wage Act (O.R.C. §§4111.01. 4111.03 and 4111.10).

73. At all relevant times, Buckeye was subjected to the requirements of the Ohio Wage Act.

74. At all relevant times, Buckeye employed Applegate and each Ohio Inspector with Ohio state law claims as an "employee" within the meaning of the Ohio Wage Act.

75. The Ohio Wage Act requires employers like Buckeye to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Applegate and each member of the Ohio Inspectors are entitled to overtime pay under the Ohio Wage Acts.

76. Buckeye had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

77. Applegate and each member of the Ohio Inspectors seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

78. Applegate and each member of the Ohio Inspectors also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Buckeye, as provided by the Ohio Wage Act.

## PMWA Violations

79. Applegate brings this claim under the PMWA as a Rule 23 class action.

80. The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

81. At all relevant times, Buckeye was subjected to the requirements of the PMWA.

82. At all relevant times, Buckeye employed Applegate and each Pennsylvania Inspector with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

83. The PMWA requires employers like Buckeye to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Applegate and each member of the Pennsylvania Inspectors are entitled to overtime pay under the PMWA.

84. Buckeye had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

85. Applegate and each member of the Pennsylvania Inspectors seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

86. Applegate and each member of the Pennsylvania Inspectors also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Buckeye, as provided by the PMWA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

87. Applegate incorporates all previous paragraphs and alleges that the illegal pay practices Buckeye imposed on Applegate were likewise imposed on the Day Rate Inspectors.

88. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, the Ohio Acts, and PMWA.

89. Numerous other individuals who worked with Applegate indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

90. Based on his experiences and tenure with Buckeye, Applegate is aware that Buckeye's illegal practices were imposed on the Day Rate Inspectors.

91. The Day Rate Inspectors were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

92. Buckeye's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Inspectors.

93. Applegate's experiences are therefore typical of the experiences of the Day Rate Inspectors.

94. The specific job titles or precise job locations of the Day Rate Inspectors do not prevent class or collective treatment.

95. Applegate has no interests contrary to, or in conflict with, the Day Rate Inspectors. Like each Day Rate Inspector, Applegate has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

96. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97. Absent this action, many Day Rate Inspectors likely will not obtain redress of their injuries and Buckeye will reap the unjust benefits of violating the FLSA and applicable state labor laws.

98. Furthermore, even if some of the Day Rate Inspectors could afford individual litigation against Buckeye, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

100. The questions of law and fact common to the Day Rate Inspectors predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Day Rate Inspectors' rights were violated as a result of Buckeye's day rate pay plan;

    b. Whether Buckeye's day rate pay plan was made in good faith;

      c.      Whether Buckeye's decision to not pay time and a half for overtime to the Day Rate Inspectors was made in good faith;

      d.      Whether Buckeye's violation of the FLSA, the Ohio Acts, and PMWA was willful; and

      e.      Whether Buckeye's illegal pay practices were applied uniformly across the nation to all Day Rate Inspectors.

101. Applegate's claims are typical of the claims of the Day Rate Inspectors. Applegate and the Day Rate Inspectors sustained damages arising out of Buckeye's illegal and uniform employment policy.

102. Applegate knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

103. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

104. Applegate demands a trial by jury.

## PRAYER

105. WHEREFORE, Applegate prays for judgment against Buckeye as follows:

      a.      An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      For an Order pursuant to Section 16(b) of the FLSA finding Buckeye liable for unpaid back wages due to Applegate and the FLSA Inspectors for liquidated damages equal in amount to their unpaid compensation;

c.      An Order certifying a Rule 23 class action on behalf of Day Rate Inspectors working for or on behalf of Buckeye in Pennsylvania at any time during the last 3 years;

d.      Judgment awarding Applegate and the Pennsylvania Inspectors all unpaid overtime and other damages available under the PMWA;

e.      For an Order awarding Applegate and the Pennsylvania Inspectors their costs of this action;

f.      An Order certifying a Rule 23 class action on behalf of Day Rate Inspectors working for or on behalf of Buckeye in Ohio at any time during the last 3 years;

g.      Judgment awarding Applegate and the Ohio Inspectors all unpaid overtime and other damages available under the Ohio Acts;

h.      For an Order awarding Applegate and the Ohio Inspectors their costs of this action;

i.      For an Order awarding Applegate and the Day Rate Inspectors their reasonable attorneys' fees and expenses as provided by the FLSA, Ohio Acts, and PMWA;

j.      For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

k.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    PA Bar 308410
    **Andrew W. Dunlap**
    PA Bar 241078444
    **Carl A. Fitz**
    Texas Bar No. 24105863
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    cfitz@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

    **Joshua P. Geist**
    PA ID No. 85745
    **GOODRICH & GEIST PC**
    3634 California Ave.
    Pittsburgh, Pennsylvania 15212
    412-766-1455 – Telephone
    412-766-0300 – Facsimile
    josh@goodrichandgeist.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**